# LAW OFFICES OF RUDY A. DERMESROPIAN, LLC

Rudy A. Dermesropian
rad@dermesropianlaw.com

810 SEVENTH AVENUE
SUITE 405
NEW YORK, NY 10019
Ph.: 646-586-9030
Fax: 646-586-9005
www.dermesropianlaw.com

Affiliate Office:
Mahwah, NJ

February 5, 2026

<u>Via ECF</u>
Judge Carol Bagley Amon
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Alicia Mullice v. Delta Air Lines, Inc., et al*. [25-cv-06507 (CBA) (LKE)]

Dear Judge Amon,

We represent the Plaintiff Alicia Mullice in the above-referenced matter. We respectfully submit this letter in response to Defendants' pre-motion letter filed on January 30, 2026, seeking a conference to discuss Defendants' anticipated motion to dismiss.

**<u>Plaintiff's Claims Meet the Pleading Requirements</u>**. It is well settled that to survive a Rule 12(b)(6) motion, Plaintiff needs only allege facts which, when taken as true, state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When determining the sufficiency of a claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in the complaint, which are accepted as true. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**<u>Plaintiff's Claims Are Timely</u>**. Plaintiff's claims are tolled during the pendency of the EEOC proceeding. *See Nixon v. TWC Admin. LLC*, 2017 U.S. Dist. LEXIS 160175, *11 (S.D.N.Y. Sep. 27, 2017). In addition, this Circuit has consistently held that the "continuous violation" exception "provides that when an employer engages in a 'continuous practice and policy of discrimination … the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Evans v. City of New York*, 2003 U.S. Dist. LEXIS 18281, at *10-11 (S.D.N.Y. Oct. 9, 2003) (citing, *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).

**<u>Constructive Discharge Claim</u>**. At this early juncture of the case, and while applying the pleading requirements discussed above, Plaintiff sufficiently pled a constructive discharge claim and is entitled to offer evidence to support her claims. Plaintiff alleges that "since Delta failed and/or refused to accommodate [her], she submitted and rescinded two resignations during December 2022" and "Defendant never engaged in any interactive process or offered any reasonable accommodation for any of Plaintiff's disabilities or conditions." (¶¶ 148, 149). Plaintiff also alleges that "Caucasian or non-Black younger Flight Attendant[s] … were not forced to resign their position." (¶119). Failure to accommodate an employee despite repeated requests could

suffice to support a claim for constructive discharge. *See Boughton v. Town of Bethlehem*, 2015 U.S. Dist. LEXIS 120413, *33 (N.D.N.Y. 2015) (internal citation omitted)). Furthermore, Plaintiff never admitted that Defendants accommodated her. In fact, the Complaint states on more than one occasion that Defendants misclassified her employment suspension as a medical leave. (¶¶ 112, 267). Also, paragraphs 126 through 142 discuss how Defendants failed to accommodate Plaintiff.

**Race and Age Discrimination Claims**. With more than 23 years of relevant experience, Plaintiff was undoubtedly qualified for her position. Also, the Complaint alleges Defendants themselves imposed the contested clearance conditions, including mandatory ongoing therapy and psychiatric evaluation, as prerequisites to returning to work and remaining employed. Furthermore, the Complaint states that Defendants misclassified her employment suspension as a medical leave. (¶¶ 112, 267). Therefore, Defendants' argument that Plaintiff was not qualified because she was on a medical leave is inconsistent with the allegations in the Complaint, which should be accepted as true. There are also numerous examples of racially and age infused comments and actions against Plaintiff, as well as other Black employees, that are sufficient to support claims of race and age discrimination. (¶¶ 43, 55, 58, 63, 73, 75, 76, 108, 119, 120). Showing that an employee was treated less favorably than a similarly situated employee outside her protected group is a recognized method to show "disparate treatment" and to raise "an inference of discrimination for the purposes of making out a prima facie case." *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010).

**Retaliation Claims**. "An adverse action for purposes of a Title VII retaliation claim must be of such a nature that it would chill an employee's impetus to complain about discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted); *see also Nunez v. Lima*, 762 F. App'x 65, 69-70 (2d Cir. 2019). As such, Defendants' adverse actions against Plaintiff for engaging in protected activities, are acts of retaliation. (See ¶¶ 64, 84, 90-92, 98). For example, Plaintiff alleges that the following actions are retaliatory: mandatory EAP placement shortly after protected EEO activity; removal from active duty; placement on Delta's internal No-Fly List; loss of operational privileges; forced mental-health compliance requirements as conditions of continued employment eligibility; prolonged unpaid exclusion; and constructive discharge. Plaintiff forcibly remained in the mandatory EAP until her separation from Delta. The only way for her to exit the forced mental health compliance coercive policy was to resign. Notwithstanding the foregoing, the temporal proximity between Plaintiff's complaints and the adverse employment actions is short allowing the jury to find that these actions are retaliatory and discriminatory in nature. *See Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 696 (S.D.N.Y. 2011).

**Hostile Work Environment Claims**. The Supreme Court "established a non-exclusive list of factors to consider when determining whether conduct in a workplace is 'severe or pervasive' so as to support a … hostile work environment claim," which includes (1) frequency; (2) severity; (3) whether physically threatening or humiliating; (4) unreasonable interference with plaintiff's work; and (5) resulting psychological harm. *Evans*, 2003 U.S. Dist. LEXIS 18281, at *16-17 (quoting *Harris v. Forklift Systems*, 510 U.S. 17 (1993) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001)). Here, the Complaint lists numerous adverse acts against Plaintiff because of her disabilities, race, and age, and Defendants' failure to accommodate her forcing her to resign. To suggest that no jury could find that the environment that Plaintiff was exposed to, as described in the Complaint, was severe or pervasive, is irrational and certainly premature at this early stage.

**ADA Claims**. As an initial matter, Plaintiff may bring her ADA claims in this action because those claims are "reasonably related" to the claims and allegations that were filed with the EEOC. *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (internal quotations and citation omitted). Defendants seem to impose a heightened burden on Plaintiff at the pleading stage. For example, Defendant argue that Plaintiff's disability discrimination claims will fail because she "cannot establish she was qualified to perform the essential functions of her role," and "there is nothing to suggest there was discriminatory motive behind any of Delta's actions, as opposed to purely safety concerns." As stated above, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420. In addition, a failure to accommodate is a form of disability discrimination. *See Williams v. N. Y. C. Dep't of Health & Mental Hygiene*, 299 F. Supp. 3d 418, 425 (S.D.N.Y. 2018) (explaining that "'discrimination' under the ADA includes a failure to provide an employee with a reasonable accommodation." (citation omitted)).

**ERISA Claims**. Plaintiff does allege in the Complaint that "Aetna was no longer paying for her sessions, and that she needed to complete certain insurance forms for medical billing payments for continued mandated employer sessions" (¶¶ 106, 251), and "to maintain employment she must pay for mental health counseling" (¶ 108). An ERISA plaintiff is not required to "point to unambiguous language to support her claim." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 83 (2d Cir. 2001). To establish Article III standing, Plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 577 (3d Cir. 2024). Furthermore, a "Plan's alleged noncompliance is its *own* injury that [plaintiff] seeks to remedy with Section 502(a)(2), rather than her receipt of decreased benefits, which *is* sufficient for standing." *Duke v. Luxottica U.S. Holdings Corp.*, 2026 U.S. App. LEXIS 3610, *18 (2d Cir. 2026) (citing *Thole v. U.S. Bank N.A.,* 590 U.S. 538, 542 (2020)). Furthermore, since Plaintiff was, at the time of her request for Plan documents, a participant based on her status as an employee with a colorable claim to vested benefits, the Plan's refusal to provide her with the requested documents was plainly in violation of § 1024(b)(4) and, as the refusal extended for more than 30 days, it became actionable under § 1132(c)(1)(B). Plaintiff plausibly alleges that Defendants imposed non-quantitative treatment limitations on mental-health benefits that were more restrictive than those applied to comparable medical or surgical care. As pled, Defendants required Plaintiff to undergo ongoing mental-health counseling and psychiatric treatment as a condition of continued employment, shifted the cost of mandated mental-health services to Plaintiff, and subjected her to prolonged monitoring with no defined endpoint, while imposing no comparable requirements for medical or surgical conditions. See 29 U.S.C. § 1185a(a)(3); 29 C.F.R. § 2590.712(c)(4). Plaintiff further alleges that she received only twelve additional "free" EAP visits after objecting to being forced to pay for a mandated mental-health visit, that no EAP Summary Plan Description was provided in 2022 or made readily available, and that Delta HR and IFS leadership affirmatively represented that no appeal or grievance process existed. Taken as true, these allegations plausibly state violations of ERISA's disclosure and claims-procedure requirements, 29 U.S.C. §§ 1022, 1133; 29 C.F.R. §§ 2520.102-2, 2560.503-1, and suffice to survive Rule 12(b)(6). We thank the Court for its time and attention to this matter.

Respectfully submitted,
*/s/ Rudy A. Dermesropian*
Rudy A. Dermesropian
Managing Member

cc: All attorneys of record (via ECF)